**United States District Court**
**District of Massachusetts**

|  |  |  |
|---|---|---|
| | ) | |
| JOHN TASSINARI, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 14-13839-NMG |
| SEAN MEDEIROS, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Presently before the Court is a petition for a writ of
habeas corpus filed by John Tassinari ("Tassinari" or
"petitioner") challenging his November, 2010 conviction for
first degree murder in the Massachusetts Superior Court for
Plymouth County.

## I. Background

### A. State Court Proceedings

In June, 2008, Tassinari was charged in a one-count
indictment with the first degree murder of his wife earlier that
year. Petitioner admitted to shooting and killing his wife and,
at trial, the main issue was whether the shooting was a result
of petitioner's sudden heat of passion. After a jury trial in
October and November, 2010, defendant was convicted of first

degree murder and sentenced to life in prison without the possibility of parole.

At trial, the government presented evidence about the relationship between petitioner and the victim. They were married in November, 2004 after a two-year relationship. In the months leading up to the victim's death, Tassinari and the victim experienced tension in their marriage which was documented in electronic communications between the couple. The government presented testimony of the victim's sister-in-law that the victim had, at one point, asked Tassinari for an "open marriage" and later for a divorce, just three months prior to her death.

In e-mails, Tassinari told the victim that he was concerned about her plans to go on vacation with a friend because other men would be present and he wasn't sure he could trust her under those circumstances. Tassinari expressed resentment about the time that his wife spent on the computer instead of with him and acknowledged that he was a controlling type and needed to work on trusting her more. On several occasions, the wife denied that she was having an affair and accused Tassinari of being insecure.

The government presented evidence of two incidents that occurred during the month of the murder. On April 10, 2008, Tassinari had planned to spend the evening with the victim but

left the house after becoming angry with her.  The victim called
her friend, expressing concern that Tassinari would hit her.
Two days before the murder, the victim went out with a group of
friends and received 12 text messages from Tassinari accusing
her of not being able to "handle herself" and voicing concern
that other men would take advantage of her while she was on
vacation.

On the night of the shooting, the couple planned to spend
the evening together.  Tassinari was frustrated that his wife
was working on her computer.  The victim went next door, to the
house of her brother and sister-in-law, to defuse the situation.
Tassinari called the victim and accused her of wearing tight-
fitting clothing.  He then called his mother and complained to
her that the victim was talking about other men.  While
Tassinari was on the phone with his mother, the victim returned
home.

Shortly thereafter, a waitress at a nearby restaurant heard
gunshots and saw Tassinari leave through the back door of his
house.  The waitress saw Tassinari fire a gun and she heard a
woman scream.  Tassinari immediately called the police and told
them that his wife had been cheating on him and that he had shot
her more than 12 times with two guns, killing her.  He said he
would wait at his house for the police to arrive.  The police

arrived and found the victim at the end of the driveway. It was later determined that she had been shot 18 times.

To support his heat-of-passion defense, petitioner introduced evidence that the victim was involved with other men in the form of internet chat history and telephone records documenting conversations with two other men unknown to Tassinari. He also proffered communications evincing the couple's love and care for each other, even after heated arguments.

Tassinari testified about the night of the murder and stated that he was putting a gun away in his gun safe when the victim returned home from her sister-in-law's house. At that point, he and the victim argued about her conversations with other men and Tassinari testified that she admitted to an affair. He stated that he lost control and could only remember reaching into the gun safe and seeing the victim's face. Tassinari suggested that the sudden revelation of infidelity caused him to lose control.

The defense presented the testimony of witnesses who stated that on the day of the murder, Tassinari had not exhibited any unusual behavior. A forensic psychologist testified that Tassinari was not suffering from any mental illness but that he was obsessional, self-centered and manipulative. The defense

also presented a theory that tension in the marriage stemmed from financial difficulties.

Petitioner appealed his conviction in November, 2010 and in September, 2013, the Supreme Judicial Court of Massachusetts ("SJC") affirmed the conviction. The SJC denied a petition for rehearing but amended its opinion with respect to Tassinari's challenge of a non-citizen juror.[1]

### B.    Federal Court Proceedings

Tassinari filed the instant petition for habeas corpus in November, 2014. He makes the following arguments: (1) the jury instructions on provocation were contradictory and confusing on the issue of whether words could constitute adequate provocation and the instruction on whether the sudden revelation of infidelity could constitute provocation improperly shifted the burden of proof to the petitioner; (2) if the jury instructions on provocation were not in error, defense counsel was constitutionally ineffective because he informed the jury that he was not arguing facts essential to the provocation defense and (3) the structure and sequence of the jury instructions directed the jurors to conclude that the petitioner was guilty without reference to the government's burden to disprove mitigation beyond a reasonable doubt.

---

[1] Petitioner has not raised a challenge to the citizenship of a juror in the instant petition for writ of habeas corpus.

## II. Legal Analysis

### A. Habeas Standard

A federal court conducting habeas review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). State court factual findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). Resolutions of state law issues by state courts are binding. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner

> can prevail only if the state court's decision [on the merits of a claim] "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

Tyler v. Cain, 533 U.S. 656, 660 (2001) (quoting 28 U.S.C. § 2254(d)(1)). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases or if the facts before the state court are "materially indistinguishable" from a Supreme Court decision but "nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405–06 (2000). A state court decision represents an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing

-6-

legal rule...but unreasonably applies it to the facts of the

particular state prisoner's case." <u>Id.</u> at 407-08.

**B.   Jury Instruction on Provocation**

Petitioner contends that the jury instructions on

provocation were contradictory and confusing and shifted the

burden of proof to him in violation of his constitutional

rights.  He suggests that the SJC "ignored" the due process

issue in its decision and that, therefore, this Court's review

is <u>de</u> <u>novo</u>.  Even if this Court determines that the SJC did

address the issue, he submits that the adjudication was contrary

to clearly established federal law.

Respondent contests Tassinari's interpretation of the SJC's

opinion, maintaining that the SJC unambiguously rejected

petitioner's federal constitutional claim by determining that

there was no underlying violation of state law.  Respondent

stresses that the statement of the SJC that the jury

instructions were nearly verbatim from the model jury

instructions on homicide in effect at the time of the trial.

A federal court conducting habeas review will not

reconsider a state court's determination of an issue of federal

law if the state court also decides the issue on an adequate and

independent state-law ground. <u>Coleman</u> v. <u>Thompson</u>, 501 U.S. 722,

729 (1991).  That rule applies whether the state law ground is

substantive or procedural. Id. at 731 (citing Fox Film Corp. v.

Muller, 296 U.S. 207, 2010 (1935)).

Tassinari's counsel requested a clarifying instruction that

a "sudden oral revelation of infidelity may be sufficient

provocation to reduce murder to manslaughter". The trial judge

rejected that proposed instruction, instead adopting, nearly

verbatim, the Model Jury Instructions on Homicide that were in

effect at the time of the trial.[2] The instruction given by the

trial judge was, in relevant part, that

> mere words, no matter how insulting or abusive, standing
> alone do not constitute reasonable provocation. However,
> the existence of sufficient provocation is not foreclosed
> because a defendant learns of a fact from a statement
> rather than from personal observation.

Contrary to petitioner's suggestion, the SJC determined

that there had been no underlying violation of state law. The

Court noted that the instruction was sufficient to make clear to

the jury that a sudden oral revelation of infidelity could

constitute sufficient provocation to reduce murder to

manslaughter. See Commonwealth v. Schnopps, 383 Mass. 178, 181-

82 (1981). The revelation that allegedly precipitates the

homicide, however, must be a "sudden discovery" to justify a

reduction. Commonwealth v. Mercado, 452 Mass. 662, 671 (2008)

---

[2] In March, 2013, a new edition of the Model Jury Instructions
was released. See Commonwealth v. Alcequiecz, 465 Mass. 557, 567
n.13 (2013).

(citing Commonwealth v. Ruddock, 428 Mass. 288, 291-92 (1998)).
The SJC found that there was "ample evidence, including the
defendant's testimony" from which the jury could find that the
victim's infidelity was not new to the defendant. Commonwealth
v. Tassinari, 466 Mass. 340, 356 (2013).  Because the jury could
have found that the idea of the infidelity was not novel or a
surprise to Tassinari, it is likely that the jury found that
there was not sufficient provocation.

Petitioner's claim that the challenged instruction shifted
the burden of proof fails because the SJC determined that the
instruction was not in violation of state law on mitigation.  To
prevail on a claim that the government's burden was improperly
shifted to defendant in violation of In re Winship, 397 U.S.
358, 364 (1970), petitioner must meet the "condition precedent"
of showing that the instruction violated state law. Sanna v.
Dipaolo, 265 F.3d 1, 14 & n.5 (1st Cir. 2001).  Because the SJC
found that the provocation instruction was not contrary to state
law, there was no violation of petitioner's due process rights.
Id. (holding that "there could be no Winship violation in the
absence of such an error"); see also Brown v. O'Brien, No. 08-
11953, 2010 WL 5283075, at *12 (D. Mass. Aug. 18, 2010) (holding
that the SJC's determination that an intoxication instruction
was not warranted under state law barred petitioner's claim that
the burden of proof had been shifted in a federally

unconstitutional manner).  Such a finding acts as an adequate

and independent state law ground barring federal habeas review

by this Court. Sanna, 265 F.3d at 14 (citing Coleman, 501 U.S.

at 729-31).

Accordingly, petitioner's claim that the trial court's jury

instruction was confusing and contradictory and improperly

shifted the burden of proof to the defendant is unpersuasive.

## C.    Ineffective Assistance of Counsel

Petitioner contends that if the instructions on provocation

were not in error, his counsel was constitutionally ineffective

because he told the jury that defendant was not asserting that

the fact of the infidelity was true.  Because the jury

instructions contained the word "fact", petitioner contends that

defense counsel's strategy of not asserting the fact of the

infidelity deprived him of constitutionally effective assistance

of counsel.

The standard for showing ineffective assistance of counsel

is the familiar two-part test set forth in Strickland v.

Washington, 466 U.S. 668 (1984).  A petitioner must first show

that counsel's performance fell measurably below objective

professional standards in light of all the circumstances. Id. at

688. Here, Tassinari must show that no competent attorney would

have used a heat-of-passion defense without explicitly asserting

the "fact" of the infidelity in closing arguments. See Lynch,

438 F.3d at 49.  A petitioner must also show prejudice stemming

from the error, meaning a "reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding

would have been different." Strickland, 466 U.S. at 694.

This is a difficult test to satisfy.

> [J]udicial scrutiny of counsel's performance must be highly
> deferential [and] counsel is strongly presumed to have
> rendered adequate assistance and made all significant
> decisions in the exercise of reasonable professional
> judgment.

Id. at 689-90; see also Knight v. Spencer, 447 F.3d 6, 15 (1st

Cir. 2006) (noting that petitioner must show, "given the facts

known at the time, counsel's choice was so patently unreasonable

that no competent attorney would have made it") (internal

citation omitted).

Tassinari fails to satisfy either prong of the Strickland

test.  First, he has not made a showing that no competent lawyer

would have structured the argument about the victim's infidelity

in the way he chose to in his closing argument.

The relevant instruction here provided that

> the existence of sufficient provocation is not foreclosed
> because a defendant learns of a fact from a statement
> rather than from personal observation.  If the information
> conveyed is of a nature to cause a reasonable person to
> lose his or her self control and did actually cause the
> defendant to do so, then a statement is sufficient.

In his closing argument, counsel for the defendant stated that

there had been testimony that the victim had told the defendant

on the night of the murder that she had been having an affair.

Defense counsel went on to say that defendant

> was not claiming that the statement is true or false.
> That's not the issue here.  The issue here is was the
> statement made.

While petitioner suggests that the closing argument "undermined"

his entire defense, the instructions make clear that if the

statement was of a variety to cause a reasonable person to lose

self control, it was sufficient to constitute reasonable

provocation.  Given that clarifying instruction, petitioner has

not shown that counsel fell below the constitutional standard of

competence. See e.g., Dugas v. Coplan, 428 F.3d 317, 328 (1st

Cir. 2005) (noting that the inquiry is "whether, given the

particular facts of th[e] case, [counsel] fell below the

constitutional standard of competence").

As to the second prong of the Strickland test, petitioner

has failed to demonstrate that the outcome of the proceeding

would have been different had counsel emphasized or argued the

fact of the infidelity in his closing argument.  Given the

evidence presented by the government suggesting that the idea of

infidelity was not new to petitioner on the night of the murder,

it is doubtful that the jury viewed the victim's statement as a

"sudden revelation".  Accordingly, it is unlikely that any

equivocality with respect to the fact of the infidelity affected

the jury. See e.g., Lynch, 438 F.3d at 49 (noting that "even if

counsel's performance were deficient, we think it extremely

unlikely the jury verdict would have been affected by it").  The

jury was instructed clearly to determine whether the information

conveyed would cause a reasonable person to lose control.

Petitioner has not met his burden of showing that his counsel

was constitutionally ineffective.

### D.    Structure of Jury Instructions

Tassinari also challenges the order of the jury

instructions, suggesting that the sequencing of those

instructions directed the jury to conclude that Tassinari was

guilty without reference to the government's burden of

disproving mitigation.

Similar to Tassinari's other challenges to the jury

instructions, he fails to meet his burden here.  In evaluating

the instructions, the SJC determined that the language of the

instructions did not improperly shift the burden to defendant in

violation of his due process rights.  Tassinari, 466 Mass. At

357 n.16 ("There is no burden-shifting language here, as the

defendant suggests.").  The jury was instructed that

> [i]f the Commonwealth proves each of these two elements [of
> an unlawful killing] beyond a reasonable doubt but has
> failed to prove the absence of heat of passion based on
> reasonable provocation, then you should return a verdict of
> guilty of manslaughter. If, however, the Commonwealth has
> failed to prove either of the two elements of voluntary
> manslaughter beyond a reasonable doubt, then you cannot
> find the defendant guilty of that crime and your verdict
> would be not guilty.

-13-

The instruction made clear to the jury that the Commonwealth was required to prove each of the elements beyond a reasonable doubt.  While petitioner quibbles with the SJC's "conclusory" resolution of his challenge, the SJC's opinion considers the structure of instructions and determines that it did not constitute error.

Petitioner resorts to social science suggesting that juror comprehension of instructions is poor but cites no caselaw suggesting that the order of the challenged instructions violates clearly established federal law or that said instructions relieved the government of the burden of proving all of the elements of the offense charged. See e.g., Farley v. Bissonnette, 544 F.3d 344, 347 (1st Cir. 2008) (noting that the jury was told repeatedly that the government had to prove beyond a reasonable doubt that defendant had committed the murder and determining that the instruction was not contrary to or an unreasonable application of clearly established federal law). Accordingly, petitioner's final claim for relief will be denied.

## <u>ORDER</u>

In accordance with the foregoing, the petition of John Tassinari for writ of habeas corpus (Docket No. 1) is **DENIED** and the petition is **DISMISSED.**

**So ordered.**

/s/ Nathaniel M. Gorton\_\_\_\_\_
Nathaniel M. Gorton
United States District Judge

Dated March 30, 2018